WALKER REYNOLDS *v.* WILLIAM N. BATSON.—SAME *v.* JAMES BRENFORD.

In a suit, instituted by a citizen of another State, to recover slaves from a citizen of this State, which he alleges are fugitives from his service, the slaves have, in the eye of the law, no interest in the result of the suit. The 2d section of Art. 4th of the Constitution of the United States does not contemplate a case of this kind. Were the Constitution construed otherwise, it would apply to all questions of ownership in slaves, between citizens of different States.

The maxim *contra non valentem agere non currit prescriptio*, does not apply to relieve the plaintiff in a case where the plea of prescription was set up by the defendants, *acquirendi causa*. It has been applied to prescriptions, *liberandi causa*, in three classes of cases:

1st. Where there was some cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action. A class of cases recognized by the Roman law, as proper for the allowance of the *utile tempus*. The cases of *Querry's Ex.* v. *Toussier's Ex.*, 4. M. R. 609; *Ayraud* v. *Babin's Heirs*, 7 N. S. 481, and *Smith* v. *Taylor*, 10 R. R 133, are of this kind.

2d. Where there was some condition or matter coupled with the contract or connected with the proceedings, which prevented the creditor from suing or acting. See cases of *Landry* v. *L'Eglise*, 3 L. R. 219; *Flint* v. *Curry*, 6 L. R. 69.

3d. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. The following are cases of this class: *Boyle* v. *Mann*, 4 An. 170, and *Martin* v. *Jennings*, 10 An. 553.

Art. 3444 C. C. and the Act of 1848, p. 60, declare that property in slaves is acquired by the prescription of five years, whether the parties reside in the State or any of them reside out of it. Prescriptions run against all persons unless included in some exception established by law. C. C. Art. 3487.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Elmore & King*, for plaintiff and appellant. *Cohen*, for defendant. *Spring*, *Larue* and *H. D. Ogden*, for warrantor and other parties.

MERRICK, C. J. These two actions are brought to recover three slaves, two in the possession of the defendant *Batson*, and one in the possession of *Brenford*.

The slave in the possession of *Brenford* disappeared from the plantation of the plaintiff, his then owner, residing in the State of Alabama, in the spring or beginning of summer, 1845, and the other two slaves disappeared in August of that year. Plaintiff, supposing his slave had run away, resorted to the usual means for their recovery, without effect. With all of his inquiries, it does not appear that he was able to hear of the slaves until he discovered them in possession of the defendants immediately before bringing his suits.

The defendant *Batson* bought the two slaves in his possession at public auction, at the Arcade, in this city, on the 16th day of September, 1845, and title was made by a person representing himself to be *Richard Teral*, of Marshall county, Alabama, and the act of sale was passed before *J. B. Marks*, Notary Public. The slaves, since that time, it is shown, have been in the public possession of the defendants, who has employed them on the levee and as stevedores.

The slave *George* was sold by *John M. Bach*, on the 21st day of September, 1846, to *S. Gardere*, the act reciting that *Bach* had purchased the slave from *Richard Teral*, on the 16th day of September, 1845, the same day that *Batson* purchased. *Gardere* sold on the 27th day of August, 1849, to the defendant *Brenford*. The suits were commenced on the 20th January, 1856. The good faith of these parties, the defendants, has not been questioned.

The plea of prescription of five years was interposed by the defendants and sustained by the lower court.

92

The plaintiff, having appealed, urges upon this court that prescription does not run against him, because the slaves were fugitives, and his possession is protected by the Constitution of the United States, and because, notwithstanding all his diligence, he has been, until the commencement of the suit, unable to discover his slaves, and therefore the maxim "*contra non valentem agere non currit prescriptio*" shields him from the operation of the general rule established by the Code.

On the first of these grounds it is sufficient to remark that, in the case before us, there is no proof that the slaves were fugitives, and had escaped from service or labor. On the contrary, their first appearance here was as slaves subject to service, under the control of one apparently their master, who sold them as slaves to purchasers in good faith. The controversy between these parties is one of property, in which the negroes owing service to one or the other of the contestants have, in the eye of the law, no interest in the result of the suit. There is no reason to suppose that a case of this kind was contemplated by the second section of the fourth Article of the Constitution of the United States. Were it to be construed otherwise, the Constitution would apply to all questions of ownership in slaves between the citizens of different States.

On the second ground. The suspension of prescription in order to allow for the *utile tempus* has generally been held by the civilians to occur only in the short prescriptions. The long prescriptions, and those by which property was acquired, with the exception of the one hundred days and the year given by the prætor, in which to claim the *possessio bonorum*, were reckoned continuously. See 4 vol. Savigny, p. 421, et seq., Berlin ed.

We do not think there can be found any case in our Reports, where the maxim "*contra non valentem agere non currit prescriptio*," has yet been applied to relieve the plaintiff in a case where the plea of prescription was set up by the defendants *acquirendi causa*. It has been applied to prescriptions *liberandi causa* in three classes of cases:

1st. Where there was some cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; a class of cases recognized by the Roman law as proper for the allowance of the *utile tempus*. See Digest, lex. 1, lib. 44, t. 3; Ibid, § 7, 8 and 9, lex. 1, lib. 49, t. 4.

The cases of *Querry's Ex.* v. *Toussier's Ex.*, 4 M. R. 609; *Ayraud* v. *Babin's Heirs*, 7 N. S. 481, and *Smith* v. *Taylor*, 10 R. R. 133, are of this kind.

2d. The second class of cases are those where there was some condition or matter coupled with the contract or connected with the proceeding which prevented the creditor from suing or acting. See cases of *Landry* v. *L'Eglise*, 3 L. R. 219; *Flint* v. *Curry*, 6 L. R. 69.

3d. The third class of cases is where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. The following are cases of this class: *Boyle* v. *Mann*, 4 An. 170, and *Martin* v. *Jennings*, 10 An. 553.

Cases may arise to which it may be proper to apply the maxim, but we do not think the present a case of this kind. Certain it is, it is not embraced within the principles governing the classes of cases enumerated. Our courts were always open to the plaintiff, and he was prevented by no agreement with nor acts of the defendants from suing. He can be in no better situation before the courts of the State than our own citizens. The question among these

.innocent persons is, on whom shall the loss fall? It is answered by Art. 3444 of the Civil Code and the Act of 1848, p. 60, which together declare that property in slaves is acquired by five years, whether the parties reside in the State or any of them reside out of it.

Article 3487 of the Code provides that prescription runs against all persons unless included in some exception established by law. The plaintiff has not brought to our notice any such exception in his favor, nor do we think he has presented a case of a character evidently intended by the Legislature to be excepted from the operation of the general rule of law which it has prescribed.

The judgment of the lower court is, therefore, affirmed.