LAND, Justice.
 

 This is a petitory action to recover %i2ths interest in 240 acres of land in the Rodessa oil field of Caddo Parish, described as follows: South half of Southeast quarter (S % of SE %,), Section 11; West half of Northwest quarter (W % of NW %), Section 13; North half of Northeast quarter (N % of NE J4), Section 14, in Township 22 North, Range 16 West.
 

 The suit is a companion case to Tillery v. Fuller et al., and five other .cases consolidated, and reported in 190 La. at page 586, 182 So. 683, and would have been consolidated with those cases had issue been joined at the time.
 

 Belle Matthews Smith, plaintiff herein, is in the same position as was Mrs. Pearl Smith Tillery in the consolidated cases, and the defendants are the same in both cases.
 

 In the consolidated cases this Court rendered judgment in favor of defendants, except as to a small interest to Velma Aliene Lowery, against whom prescription had been suspended by reason of her minority.
 

 The plea of prescription of thirty years liberandi causa under Article 1030 of the Revised Civil Code, filed by defendants, was sustained, and it was held by the Court that the rights of plaintiffs to accept a succession as against the co-heir who had accepted were barred by the prescription of thirty years, unless in a particular instance prescription may have been suspended long enough by the minority of an heir.
 

 Plaintiffs concede that the decision in the consolidated cases is controlling here, unless prescription under Article 1030 of the Revised Civil Code has been suspended in favor of Belle Matthews Smith, under the doctrine “contra non valentem agere non currit prescriptio,” based upon the following facts
 
 *673
 
 contained in the stipulation of the parties (Tr. 64):
 

 “1. Elizabeth Reed Spearman (Lizzie Spearman) was born October 21, 1861, and died November 29, 1886, intestate. The said Elizabeth Reed Spearman married J. D. Matthews September 29, 1881, and the only issue of said marriage was Belle Matthews Smith, one of the plaintiffs, who was born July 27, 1882;
 

 “2. Belle Matthews Smith married at the age of 16 years; thereafter she was a widow about four years, and is now the wife of Alex Smith, to whom she was married in 1916;
 

 “3. Belle Matthews Smith has been a non-resident of the State since she was four years old, having resided in the State of Texas from 1886 to 1898, in the State of Oklahoma from 1898 to 1916, and in the Republic of Mexico continuously since 1916;
 

 “4.
 
 Belle Matthews Smith had no knowledge of the Spearman family of Caddo Parish, Louisiana, her mother’s people, until the year 1935, when she was sought and found in the Republic of Mexico, and was informed of the interests which she seeks to recover by this suit, also of the family history set out in her petition herein for that purpose. Prior to the year 1935, she never knew or heard of Lucy Spearman Wilson, her aunt, nor did she know, or had she ever heard, of any interests which she might have in property located in Caddo Parish, or elsewhere in the State of Louisiana;
 

 “5. Charles F. York and C. E. McClelland acquired from Belle Matthews Smith on August 28, 1935, one-half of her interest in the property described in her petition, as per deed recorded in the Clerk’s Office of Caddo Parish, Louisiana; and C. E. McClelland conveyed to Charles F. York on September 12, 1935, his rights, title and interest in said property, as per deed filed and recorded in the Clerk’s Office of Caddo Parish, Louisiana.”
 

 The present suit was filed March 25, 1939. Belle Matthews Smith arrived at the age of 21 years in 1903. This suit was filed 36 years after plaintiff arrived at the age of majority. The judgment of the District Court sustained defendants’ plea of prescription of 30 years liberandi causa under Article 1030 of the Revised Civil Code, and rejected plaintiffs’ demands. Plaintiffs have appealed.
 

 Defendants contend that the lapse of more than 30 years without any action on the part of plaintiff, Belle Matthews Smith, or those through whom she claims, to recover the property herein, or to accept the successions as herein set forth, bars any claims which plaintiffs may have had.
 

 Belle Matthews Smith inherited from Lucy Spearman Wilson, her aunt, an undivided %i2ths interest in and to property described in her petition. Charles F. York, the other plaintiff, purchased from Mrs. Smith one-half of her interest, and they brought this petitory action to recover said interest. Defendants tendered the plea of prescription of 30 years under Article 1030 of the Civil Code, which reads: “The faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the longest prescription of the. rights to immovables.”
 

 
 *675
 
 Plaintiffs met the plea with the facts stated in the stipulations of counsel to show a suspension of prescription. The sole grounds urged by Belle Matthews Smith for the suspension of prescription are her non-residence and ignorance of her property rights, as stated in the stipulation of facts, upon which judgment was rendered in the lower court rejecting plaintiffs’ demands.
 

 Article 3521 of Revised Civil Code provides that: “Prescription runs against all persons, unless they are included in some exception established by law.”
 

 Plaintiffs are not relieved from the bar of prescription under this article by any statute of this State.
 

 In Reynolds v. Batson, 11 La.Ann. 729, 730, relied upon by plaintiffs, the Court held that the maxim “contra non valentem ager'e non currit prescriptio” had been applied to prescription liberandi causa in three classes of cases, namely:
 

 “1st. Where there was some cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff’s action; a class of cases recognized by the Roman law as proper for the allowance of the utile tempus. See Digest, lex. 1, lib. 44, t. 3; Ibid, [§§] 7, 8 and 9, lex. 1, lib. 49, t. 4.
 

 “The cases of Quierry’s Ex. v. Faussier’s Ex., 4 Mart. [O.S.],.609; Ayraud v. Babin’s Heirs, 7 [Mart.] N.S., [471] 481, and Smith v. Taylor, 10 Rob. 133, are of this kind.
 

 “2d. The second class of cases are those where there was some condition or matter coupled with the contract or connected with the proceeding which prevented the creditor from suing or acting. See cases of Landry v. L’Eglise, 3 La.R. 219; Flint v. Cuny, 6 La.R. [67] 69.
 

 “3d. The third class of cases is where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. The following are cases of this class: Boyle v. Mann, 4 [La.] Ann. 170, and Martin v. Jennings, 10 [La.] Ann. 553.”
 

 In Reynolds v. Batson, supra, the Court said further 11 La.Ann. at pages 730 and 731:
 
 "Cases may arise
 
 to which it may be proper to apply the maxim, but we do not think the present a case of this kind. Certain it is, it is not embraced within the principles governing the classes of cases enumerated. ■ Our courts were always open to the plaintiff, and he was prevented by no agreement with nor acts of the defendants from suing. He can be in no better situation before the courts of the State than our own citizens. The question among these innocent persons is, on whom shall the loss fall? It is answered by Art. 3444 of the Civil Code and the Act of 1848, p. 60, which together declare that property in slaves is aquired by five years, whether the parties reside in the State or any of them reside out of it.” (Italics purs.)
 

 The stipulation of facts in the case fails to show that plaintiff comes within any one of the three classes of cases mentioned in Reynolds v. Batson, supra, to which the prescription liberandi causa applies.
 

 1st. There is no cause shown which prevented our courts from acting or taking cognizance of plaintiff’s action.
 

 
 *677
 
 2d. There is no condition or matter coupled with the contract or connected with the proceeding shown, which prevented plaintiff from suing or acting.
 

 3d. Nor was any act done by any of the defendants shown, effectually to prevent plaintiff from availing herself of her cause of action.
 

 It is certain that plaintiff’s case is not embraced within any one of the three classes of cases enumerated in Reynolds v. Batson as causes suspending the prescription liberandi causa.
 

 The mere statement in the opinion in that case that
 
 “Cases may arise
 
 to -which it may be proper to apply the maxim,” without stating the nature of any such case or cases, does not assuredly constitute thát decision authority for the contention of plaintiff that mere non-residence and ignorance of her property rights constitute sufficient causes for the suspension of the prescription lib'erandi causa.
 

 Had the decision in the Batson case so held, it would have been against the great weight of authority to the contrary.
 

 In Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, the plaintiffs were non-residents of the State of Louisiana and ignorant of their rights. The Court said, 105 La. at page 562, 30 So. at page 183: “The deeds were of record. The failure to attack them in time is not due to any act of these heirs, but to the facts, as we take it, that plaintiffs were not aware of their rights under the laws of Louisiana, which are different, as relates to inheritance, from those of the state in which the estate was domiciled, and in which plaintiffs reside.”
 

 A review of the jurisprudence on the maxim, “contra non valentem, agere non currit prescriptio,” appears in Hyman v. Hibernia Bank & Trust Co. et al., 139 La. 411, 71 So. 598, 602, and the Court extended the doctrine to apply to a case where the inability of plaintiff to act was brought about by the ill practices of the defendants, as otherwise the defendants would have benefited by their own wrong, a thing inadmissible in law.
 

 Plaintiff, however, in the instant case, makes no contention that her inability to act was brought about by the ill' practices of the defendants, but rests her case solely upon her non-residence for many years and ignorance of her property rights.
 

 The United States Circuit Court of Appeals for the Fifth Circuit had occasion to consider the maxim, “contra non valentem agere non currit prescriptio,” in Arkansas Natural Gas Co. v. Sartor et al., 78 F.2d 924, and at pages 928, 929, said: “ * * Under the law of Louisiana prescription does not run against one who is ignorant of his rights, provided the party pleading it has been guilty of fraud that contributes to the want of knowledge on the part of plaintiff. Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598.
 
 But in the absence of fraud, prescription runs against all persons, unless exempted by some provision of the statute. Plaintiffs are not protected by any statutory exemption.
 
 In Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, it was said that those who claim exemption from prescription by reason of ignorance resulting from fraud must allege and show that such ignorance was neither willful nor negligent;
 
 *679
 
 and again, in Littlefield v. City of Shreveport, 148 La. 693, 87 So. 714, it was said that mere passivity cannot arrest the course of prescription, good faith not being required on the part of the person pleading prescription. La.Civil Code, art. 3550.
 

 “The above-cited decisions of the Supreme Court of Louisiana are in line with the general jurisprudence of the country.
 
 Statutes of limitation are founded on public policy and are favored in the law. Mere ignorance of one’s rights will not toll the statute of limitations.
 
 Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry. There must be reasonable diligence on the part'of plaintiff
 
 and the means of knowledge are the same in effect as knowledge itself.
 
 Anderson v. Gailey (D.C.) 33 F.2d 589; Insurance Co. of North America v. Parr (C.C.A. [4 Cir.]), 44 F.2d 573; Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807; United States v. Oregon Lumber Co., 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261. We know of no decision, either of controlling authority or persuasive, holding that mere ignorance on the part of the-creditor will toll the statute.” (Italics ours.)
 

 In Kieley v. McGlynn, 21 Wall. 503, 519, 22 L.Ed. 599, at page 605, the Supreme Court of the United States had the following to say concerning the claim of plaintiffs that they lived in a remote and secluded-region: “They do not pretend that the facts of the fraud were shrouded in concealment, but their plea is that they lived in a remote and secluded region- * * * . Parties cannot thus,
 
 by their seclusion from the means of information, claim exemption
 
 from the laws that control human affairs, and set up a right to open up all the transactions of the past. The world must move on,
 
 and those who claim an interest in persons or things must be charged with knowledge of their status and condition,
 
 and of the vicissitudes to which they are subject.” (Italics ours.)
 

 In Littlefield v. City of Shreveport, 148 La. 693, 698, 87 So. 714, 716, the Supreme Court, speaking of the case of Hyman v. Hibernia Bank & Trust Company, supra, said: “That decision makes a clear distinction between the activity, or machinations, of a debtor for lulling his creditor into a false security, and his mere passivity. Mere passivity cannot arrest the course of prescription. ‘Good faith not being required on the part of the person pleading this prescription,’ etc. C.C. art. 3550.”
 

 Nor can the mere passivity of the defendants in this case arrest the course of prescription, in the total absence of allegation or proof of machinations upon their part lulling plaintiff into a false security.
 

 Judgment affirmed.
 

 PONDER, J., absent.