314 So.2d 401 (1975)
Russell L. JACKSON
v.
James ZITO.
No. 10264.
Court of Appeal of Louisiana, First Circuit.
May 19, 1975.
Rehearing Denied July 9, 1975.
Writs Refused September 26, 1975.
*403 Dennis R. Whalen, Baton Rouge, for appellant.
Donald S. Zuber, Baton Rouge, for appellee.
Before LANDRY, BLANCHE and YELVERTON, JJ.
BLANCHE, Judge.
Plaintiff-appellant, Russell L. Jackson, appeals from an adverse judgment of the Nineteenth Judicial District Court, granting defendant-appellee, James Zito's peremptory exception of prescription. We reverse.
The plaintiff alleges he was injured on August 16, 1972 while employed by Lyle Brown, an independent contractor-driver for Aero-Mayflower, in Baton Rouge, Louisiana.
Thereafter, the plaintiff engaged the defendant to represent him in his workmen's compensation claim against said employer. On August 16, 1973, no proceedings against the plaintiff's employer had been instituted, and therefore, on that date, the plaintiff's claim prescribed under the provisions of L.S.A.-R.S. 23:1209.[1]
The defendant contends that the plaintiff informed him the accident occurred in October, 1972, and that it was not until August 30, 1973 that defendant became aware of the actual date, August 16, 1972, on which the accident occurred. In other words, defendant contends he did not learn of the true date of the accident until after plaintiff's claim had prescribed, and upon learning the true date of the accident, the defendant immediately notified the plaintiff by certified mail that, in defendant's opinion, his claim had prescribed. The evidence indicates that the plaintiff received said notice from defendant on either September 3 or 4, 1973. The merits of the instant case are not before this court, and we make no determination concerning the alleged confusion surrounding the accident date.
On September 3, 1974, the plaintiff instituted the present suit for legal malpractice, alleging that the defendant allowed the plaintiff's claim for workmen's compensation against his employer to prescribe in that suit was not brought on or before the 16th day of August, 1973.
In the trial court, the defendant asserted the peremptory exception of one year liberative prescription under L.S.A.Civil Code *404 Article 3536.[2] The trial judge, after concluding that the instant suit was based upon negligence, decided that a prescriptive period of one year was applicable, and said period began running on August 16, 1973, the date the plaintiff's workmen's compensation claim prescribed. He rejected the plaintiff's argument that the prescriptive period began running only from the date the plaintiff received knowledge that his claim against his employer had prescribed, and stated:
"Since the compensation claim prescribed on August 16, 1973, more than one year prior to the date of the filing of the suit on September 3, 1974, it appears that plaintiff's action has prescribed by the prescription of one year in tort under LSA-C.C. Art. 3536.
Accordingly, the exception of prescription appears to have merit and will be granted."
Plaintiff-appellant contends that the trial judge erred in holding that the instant suit was brought as an action ex delicto and therefore prescribed in one year. He asserts that a suit against an attorney for malpractice can be brought either as an action ex delicto or as an action ex contractu and that the trial judge should have recognized this dual right and applied the prescriptive period applicable to contracts[3] rather than delicts. It is obvious that an application of the prescriptive period for contract would have precluded a finding that the instant claim had prescribed. In support of the foregoing argument, the plaintiff relies upon L.S.A. C.C.P. Article 862 and comments thereto which read in part:
"Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.
(a) This article eliminates the necessity for the prayer for general and equitable relief, as it automatically performs the function of such prayer . . .
(b) Even more important, this article, together with Art. 1154, infra, suppresses the harsh and unduly technical `theory of the case' doctrine in Louisiana, under which the litigant must select a theory of his case or defense and adhere to it throughout the litigation and which has been severely criticized. See Hubert, The Theory of a Case in Louisiana, 24 Tul.L.Rev. 66 (1949) . . ."
We acknowledge that the thrust of the above provision "is to permit the courts to render substantive justice on the basis of facts pleaded, and to refuse to permit a denial of substantive rights (where the party has timely filed pleadings alleging the factual basis of his claim) because of technical defects of language or of some mechanical `theory-of-the-case' characterization defeating a recovery otherwise allowable under the facts pleaded," (citations omitted), Justice Tate, concurring in Federal Insurance Co. v. Insurance Co. of No. Amer., 262 La. 509, 263 So.2d 871 (1972). Furthermore, we have recognized the existence of more than one remedy arising out of the same circumstances, Federal Insurance Co. v. Insurance Co. of No. Amer., supra. The malpractice suit against an attorney has been said to partake of elements both ex contractu and ex delicto, Marchand v. Miazza, 151 So.2d 372 (La.App. 4th Cir. 1963); Vessel v. St. Paul Fire & Marine Insurance Co., 276 So.2d 874 (La. App. 1st Cir. 1973).
*405 The plaintiff's claim that an attorney-client relationship existed necessarily implies that he might also assert an action ex contractu. Therefore, the plaintiff in the instant case had two possible causes of action against the defendant. One, ex delicto for his alleged negligence in failing to timely file the plaintiff's workmen's compensation suit, and two, an action ex contractu based upon the fact that a breach of a contractual duty may have occurred.
As noted supra, the trial judge considered the instant suit as one brought solely ex delicto. He then concluded that since the suit was governed by a one year prescriptive period, the claim had prescribed and the entire suit was dismissed. We will first consider the plaintiff's claim that the trial judge erred in granting the peremptory exception of prescription in his action ex delicto.
As noted above, plaintiff's right to sue for workmen's compensation benefits expired on August 16, 1973, and the instant suit against his attorney for negligently allowing his right of action to prescribe was not instituted until September 4, 1974. From the foregoing it can be concluded that plaintiff's action surely would have prescribed, since more than one year had elapsed from the date of the injury to the date of filing suit.
To overcome this obstacle, plaintiff argues that even if his cause of action is ex delicto rather than contract, the same was not prescribed because the plaintiff did not know of the damages to him until September 3, 1974, and suit was filed less than a year from the date of his knowledge. He argues that it was not until the defendant wrote him informing him that his suit had prescribed did he know that the defendant had failed him. Thus, he maintains that the one year liberative prescription began running only when he discovered the purported negligent conduct of the defendant, and not from the date his original workmen's compensation claim prescribed, as held by the trial judge. Plaintiff relies on the doctrine of "Contra non valentem agere nulla currit praescriptio" (No prescription runs against a person unable to bring an action) to support his argument that the one year prescriptive period began running from the date of his first knowledge of the injury to him. In other words, plaintiff reasons that he could not have brought his action on August 16, 1973, because he was unaware of defendant's injurious conduct at that time. If plaintiff's argument is correct, then suit would have been timely filed because it was brought within one year of his gaining knowledge of a right of action against the defendant.
Though plaintiff suggests prescription does not commence to run until the date he became aware of the defendant's injurious conduct, we believe the question more properly is whether or not the doctrine of "Contra non valentem" should be utilized to suspend the running of prescription during the period of time that the plaintiff was ignorant of his right to sue the defendant for legal malpractice.
The basic law of Louisiana concerning this matter is that "[p]rescription runs against all persons, unless they are included in some exception established by law," L.S.A.-C.C. Art. 3521. However, plaintiff-appellant has not cited any statutory exceptions which would have suspended the running of prescription in the instant case, choosing to rely solely on the foregoing doctrine.
The doctrine is contrary to the basic policy behind which prescription periods were established and for this reason has always been met with disfavor from legal scholars. See, for example, Plainol's discussion of the doctrine as it relates to Article 2251 of the Code Napoleon[4] (which is an almost literal translation of Louisiana *406 Civil Code Article 3521) in Plainol Civil Law Treatise, Volume 1 Part 2, Sections 2697-2705. See also the Louisiana State Law Institute's Civil Law Translations, Volume 5, Prescription, from the First Part, Section 368, by Baudry-Lacontinerie and Tissier. While our Louisiana courts have on occasion utilized the doctrine to find an "exception" to Article 3521 so as to effectively suspend the running of prescription, see Prather v. Massey-Ferguson, Inc., et al., 232 So.2d 80 (La.App. 3rd Cir. 1970), writ refused, 255 La. 1101, 234 So. 2d 195 (1970), and Hyman v. Hibernia Bank and Trust Co., 139 La. 411, 71 So. 598 (1916), it has been applied in a somewhat limited and restricted sense.[5]
In Kennard v. Yazoo & M. V. R. Co., 190 So. 188, (La.App. 1st Cir. 1939) the rule was recognized as a child of necessity brought into being to prevent the injustice of an innocent plaintiff being lulled into a course of action in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby the plaintiff has been kept in ignorance of his rights.
The case of Reynolds v. Batson, 11 La. Ann. 729 (1856) gives three situations wherein the principle is applicable:
"1st. Where there was some cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's actions * * *
2nd. Where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting.
3rd. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action."
In Prather, supra, the court found that the debtor himself had done some act effectually to prevent the creditor from availing himself of his cause of action.
In Hyman, supra, the court decided two factors were necessary before the doctrine could be applied. First, the plaintiff's cause of action must have manifested itself with sufficient certainty to be susceptible of proof in a court of law before prescription began running against him. Second, the doctrine was applied where the defendant had knowingly concealed information from the plaintiff, or had through his own conduct misled or lulled the plaintiff into inaction.
Thus, both the history of the doctrine and its jurisprudential application convinces us that we must proceed cautiously and find exceptional circumstances to act in derogation of the plain wording of Article 3521.
Plaintiff argues the nature of the relationship between attorney and client and the attorney's superior knowledge of the law and his position of trust. In effect, he states that unless we hold that prescription does not run against a plaintiff seeking to sue his attorney for legal malpractice until the date the plaintiff became aware that he has a right against said attorney, the result would be chaotic because if prescription runs only from the date of the act, all the attorney need do is remain silent and allow prescription to run in his favor.
At first glance, plaintiff's argument seems to have merit. However, the factors enunciated in Hyman and Reynolds, supra, are applicable a fortiori to the fiduciary relationship which exists between an attorney and his client. Contrary to plaintiff's contention, an attorney who remains silent when prescription has run against his client would, in light of his fiduciary duty to *407 said client, be guilty of an act which effectually prevented the client from availing himself of his action against said attorney. As per Hyman and Reynolds, supra, the client could therefore invoke the doctrine to suspend the running of prescription.
Had plaintiff herein made such a case, we certainly would have invoked the doctrine on the grounds of some concealment or fraudulent conduct on the part of defendant to lull plaintiff in a course of inaction to the prejudice of his legal rights. However, there is nothing in the record to show any fraud or concealment to the prejudice of the plaintiff's rights. To the contrary, as soon as defendant learned the true date of the accident purportedly giving rise to plaintiff's injuries, he immediately informed him by registered mail that his claim had prescribed.
Nor does the mere fact that the plaintiff was ignorant of his right of action against the defendant until he received notification on September 3, 1973, benefit him. Ignorance of one's rights is not sufficient to invoke the doctrine of "Contra non valentem" under the holdings of Aegis, footnote 5, supra; R. J. Reynolds Tobacco Company v. Hudson, 314 F.2d 776 (U.S.Ct. of App. 5th Cir. 1963); and Martin v. Mud Supply Company, 239 La. 616, 119 So.2d 484 (1960); nor does it satisfy the criteria of Prather and Hyman, cited supra.
The following language from the opinion in Martin, supra, fully answers plaintiff's argument concerning the ignorance of his rights in the absence of any fraud or concealment by the defendant:
"Liberative prescription is that form of prescription which releases one under certain conditions from the payment of a debt alleged to be owed by him. This type of prescription was thoroughly explained in the case of Arkansas Natural Gas Co. v. Sartor, 5 Cir., 78 F. 2d 925, 928, certiorari denied, 296 U.S. 656, 56 S.Ct. 381, 80 L.Ed. 467, as follows:
`* * * Under the law of Louisiana prescription does not run against one who is ignorant of his rights, provided the party pleading it has been guilty of fraud that contributes to the want of knowledge on the part of plaintiff. Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598. But in the absence of fraud, prescription runs against all persons, unless exempted by some provision of the statute. Plaintiffs are not protected by any statutory exemption. In Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, it was said that those who claim exemption from prescription by reason of ignorance resulting from fraud must allege and show that such ignorance was neither willful nor negligent; and again, in Littlefield v. City of Shreveport, 148 La. 693, 87 So. 714, it was said that mere passivity cannot arrest the course of prescription, good faith not being required on the part of the person pleading prescription. La. Civil Code, art. 3550.
`The above-cited decisions of the Supreme Court of Louisiana are in line with the general jurisprudence of the country. Statutes of limitation are founded on public policy and are favored in the law. Mere ignorance of one's rights will not toll the statute of limitations. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry. There must be reasonable diligence on the part of plaintiff and the means of knowledge are the same in effect as knowledge itself. * * * We know of no decision, either of controlling authority or persuasive, holding that mere ignorance on the part of the creditor will toll the statute.'"
For the foregoing reasons, the plaintiff's claim ex delicto against the defendant for his negligence in failing to *408 timely file the plaintiff's workmen's compensation suit prescribed prior to the filing of this malpractice suit. Therefore, the defendant's peremptory exception based thereon was properly allowed by the trial judge.
As previously noted, however, the plaintiff also urges on appeal that regardless of the fact that his action ex delicto had prescribed, his action ex contractu is still alive. He urges this proposition even though his petition makes no mention of contract.
Paragraph 8, which contains the allegation against the defendant, reads as follows:
"Petitioner shows that his injury totally and permanently disabled him from doing the type of work he was doing for Lyle Brown, to-wit, loading and unloading of furniture and other heavy items from moving vans, and that because of the nature of the injury to his hand he is also disabled from doing any other work of a reasonably similar character, and he is therefore totally and permanently disabled from employment as defined by the Louisiana Workmen's Compensations laws, and that he is entitled to SIXTY FIVE ($65.00) DOLLARS per week compensations benefits from August 16, 1972, for five hundred weeks, and statutory penalties and attorney fees all from James Zito, whose negligence has prevented petitioner from recovering these amounts from Lyle Brown and/or Aero-Mayflower and Hartford Insurance Company." (Emphasis supplied)
From the foregoing quote, it is evident that the plaintiff's suit was brought ex delicto.
However, L.S.A.C.C.P. Article 2164 and comments thereto[6] allows an appellate court to disregard the "theory of the case" doctrine and allows it to give a judgment which is just, legal, and proper upon the record. See Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 262 So.2d 350 (1972) which acknowledged that Article 2164 is in fact the law in Louisiana.
Even though the plaintiff's petition made no mention of contract, he has alleged that an attorney-client relationship existed and that it gave rise to an action ex contractu. We note that one set of circumstances can give rise to more than one cause of action, and each of those causes has its own prescriptive period. Accordingly, if the plaintiff has an action ex contractu, it has not prescribed, as the instant suit was brought within the prescriptive period of Article 3544. Therefore, even though the granting of the peremptory exception of prescription concerning the plaintiff's action ex delicto was properly granted, the plaintiff's action should not be entirely dismissed. The plaintiff is entitled to a ruling on his claim that in addition to his delict, the defendant also breached a contractual duty to him which stemmed from the attorney-client relationship.
The finding by the trial judge is correct insofar as it held that liberative prescription precludes Russell L. Jackson from prosecuting his delictual claim that James Zito negligently allowed Jackson's workmen's compensation action to prescribe.
*409 However, for reasons stated herein, the judgment of the Nineteenth Judicial District Court which dismissed the plaintiffappellant, Russell L. Jackson's suit against the defendant-appellee, James Zito, is hereby reversed and the case is hereby remanded to the trial court for further proceedings in accordance with law.
Reversed and remanded.
NOTES
[1] R.S. 23:1209. "In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter . . ."
[2] Art. 3536. "The following actions are also prescribed by one year: That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses . . ."
[3] Art. 3544. "In general, all personal actions, except those before enumerated, are prescribed by ten years."
[4] 2251. Prescription runs against all persons, unless they are within some exception established by a law.
[5] For an excellent discussion concerning the history and underlying theory behind the doctrine of "Contra non valentem" and its effects on prescription, see Aegis v. Delta Fire & Casualty Company, 99 So.2d 767 (La.App. 1st Cir. 1957), writ granted but unreported, March 17, 1958.
[6] Art. 2164. Scope of appeal and action to be taken; costs

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
Official Revision Comments
(a) The purpose of this article is to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below. This article insures that the "theory of a case" doctrine, which has served to introduce the worst features of the common law writ system into Louisiana is not applicable to appeals under this Code . . .