FRUGÉ, Judge.
This is an action to avoid the sale of a rice combine or alternatively to secure a reduction of the purchase price because of alleged redhibitory defects in the machine. Defendant 190 Tractor and Equipment Company, Inc., filed a peremptory exception of prescription which the trial court granted, dismissing plaintiff’s action against 190 Tractor and Equipment Company, Inc., as of non-suit. Plaintiff then appealed to this court.
On November 22, 1967, the plaintiff-appellant purchased a rice combine from defendant, 190 Tractor and Equipment Company, Inc. The defendant refused to or was unable to deliver the combine until February of 1968. The plaintiff immediately encountered problems with the combine and returned it to 190 Tractor and Equipment Company’s successor, Tri-Parish Equipment, Inc., for repairs. Despite the attempted repairs, plaintiff continued to have trouble with the combine. After defendant’s successor apparently abandoned attempts to repair the combine, the plaintiff instituted this action on January 8, 1969.
The transaction in question was clearly a contract of sale which was perfected on November 22, 1967, when there was agreement as to the price and the object, Vercher v. Toda Enterprises, Inc., 216 So.2d 318 (La.App.3d Cir.1968).
*81 Defendant properly contends that the prescriptive period of LCC Article 2534 applies. That article reads as follows:
“The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.
“This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser.
“Nor where the seller, not being domicil-iated in the State, shall have absented himself before the expiration of the year following the sale; in which case the prescription remains suspended during his absence.”
Since the plaintiff failed to show that the defendant knew of the alleged defects or that the defendant was not domiciled in this state, neither of the two exceptions in paragraphs two and three of the above article are applicable.
The plaintiff also failed to show any connection between the defendant and Tri-Parish Equipment, Inc., which attempted to repair the subject combine. Therefore, the jurisprudence relating to interruption of the prescriptive period because of attempted repairs by the vendor is inapplicable.
In the instant case the sale was completed on November 22, 1967, delivery was made in February of 1968, and suit was filed on January 8, 1969.
In view of the above, it seems that we are faced with a question de novo before this court. That is, does a delay in delivery occasioned solely by the fault of the vendor suspend the running of the one-year prescriptive period of Article 2534 for an action in redhibition or does the prescriptive period begin to run from the date of the sale regardless of the date of delivery?
Article 2534, supra, says prescription begins to run “commencing from the date of the sale.” The corresponding article in the Louisiana Civil Code of 1825 had the same language. Article 75 of the Louisiana Civil Code of 1808 required that the action be brought within six months of the sale or discovery of the defect, and in the latter case no more than one year “from the time of the sale.”
Thus, it is apparent that Louisiana codal provisions have always used language referring to the date of the sale. Louisiana cases have constantly reiterated that prescription commences from the date of the sale. However, no cases were brought to the attention of this court, nor were any found by it, where the precise issue of this case (i. e., whether delay in delivery occasioned by the fault of the vendor suspends the running of prescription) was presented.
The' French, however, had no specific time limitation and only gave the courts general guidelines. Article 1648 of the Code Napoleon (1804) provided:
“The action resulting from redhibitory vices must be instituted by the buyer, within a short time, according to the nature of the redhibitory vices, and the custom of the place where the sale has been made.”
Planiol, Vol. 2, No. 1466, comments thusly on Article 1648 and prescription of an action in redhibition:
“In the terms of Article 1648, these actions should be instituted ‘within a short time’ which the law was not fixed. The Judge therefore has, in principle, discretionary power in determining whether the buyer still has time to act (Cass., 27 June 1887, D 88.1.300, S. 87.1, 316: Cass.Civ., 8 April 1925, D. 1927.1.41, P. and S. 1925.1.131). However, it is intended that he should conform to local customs when these exist (same article).
“Prescription begins to run (and this is not fixed by the law), on the day of delivery or of the sending into real possession.”
« * * * 'phg Franco-Italian pro jet for a code of obligations imposes on the purchaser the obligation to denounce the *82 vice within sixty days of the discovery and establishes a prescription for the action of a year for immovables, and of six months for movables beginning with the delivery (Art. 372).” (Emphasis ours.)
The underlying rationale for a certain prescriptive period for redhibitory action is to give the buyer a reasonable time in which to discover the defect without allowing so much time as to unduly prejudice the vendor. To allow one year from the date of delivery, when delivery has been delayed by the fault of the vendor, would not significantly increase the type of risk from which the one-year limitation is intended to protect the vendor. Yet to hold strictly to a period of one year after the sale would in some cases do considerable violence to the rationale of providing the buyer a reasonable time to discover the defects. Suppose the seller could not or would not make delivery until eleven months and twenty-five days or even thirteen months after the completion of the sale. In such cases the purchaser would, through no fault of his own, be effectively denied an action in redhibition.
It would be difficult to argue for such an incongruous result if it were not for the express language of L.C.C. Article 2534 and the many cases which casually state that prescription begins to run from the date of the sale. However, in those cases the same result would have obtained had the courts just as casually stated that prescription begins to run from the date of delivery.
The French approach (as reflected in CN Article 1804 and Planiol’s comments thereon) of taking into account the date of delivery seems to be the most logical and desirable solution to the problem. Although our courts have not indicated what solution would be reached in such a case, we hold that in the precise situation before us the prescriptive period does not begin to run until the date of delivery.
This result is not based solely on the reasons already given but is also rooted in another area of Louisiana law which recognizes the principle “Contra non valen-tem agere non currit praescriptio.” This means that the running of prescription is suspended as to a party against whom it would ordinarily run, if that party is unable to bring an action to interrupt it.
The cases of Reynolds v. Batson, 11 La.Ann. 729 (1856) gives three situations where the principle is applicable.
“1st. Where there was some cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff’s actions * * * ”
“2nd. Where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting.”
“3rd. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action.” Numerous citations.
It seems that the instant case would fall in the third category where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action.
The principle was further explained in Kennard v. Yazoo & M.V.R. Co., 190 So. 188, 191 (La.App. 1st Cir. 1939) wherein the court stated:
“While the maxim of ‘Contra non valen-tem’ is of common law origin, it has been adopted and applied in a somewhat limited and restricted sense in this State. The rule is a child of necessity brought into being to prevent the injustice of an innocent plaintiff being lulled into a course of action in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plain *83 tiff has been kept in ignorance of his rights.” (Emphasis ours.)
Also, in Cruze v. Life Ins. Co. of Virginia, 184 So. 735, 738 (La.App.Orl.Cir.1938), the court said:
“It would seem that a literal interpretation of the language of the Code precludes a consideration of the doctrine ‘contra non valentem’ in this state. Be this as it may, the Supreme Court has many times recognized the underlying justice of the doctrine and has applied it on many occasions. The leading authority on this subject is the case of Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598, where the Court discussed this question in detail and concluded that the doctrine may be invoked in this state, as a cause for suspending the course of prescription, in cases where the debtor has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the creditor from ascertaining knowledge of the existence of the debt.” Numerous cases cited.
In commenting on the Cruze case, the court in the Kennard case, supra, 190 So. pp. 191, 192, said “the law required the company to insert the provision in the policies for the information and benefit of those who might have an interest in taking advantage of the extended insurance, and the omission by the company of a legal duty, even though not fraudulent, could not be taken advantage of in support of a plea of prescription.”
In the instant case the vendor had a legal duty to deliver the combine, and in failing to do so, it cannot rely on the running of prescription prior to delivery. In the Cruze case, supra, the plaintiff had a better opportunity to ascertain her rights than did the plaintiff in the instant case, who had no opportunity at all to investigate the condition of the combine until delivery was made.
Similarly, the purchaser in those cases suspending the running of prescription while the vendor attempts to make repairs, is in a better position to protect his rights than is a purchaser who has not even acquired possession of the thing. Suspension of prescription in the latter instance would be as appropriate, if not more so, than in the former.
Therefore, we hold that prescription did not begin to run against the purchaser until the combine was delivered to him. Accordingly, the peremptory exception of prescription was improvidently granted. The judgment appealed from is reversed and this case is remanded to the District Court for further proceedings in accordance with the law and the view expressed herein. All costs of this appeal are assessed against the defendant-appellee.
Reversed and remanded.
On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion a rehearing should be granted.